UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:23-CR-20375-TGB-EAS** |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | **ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA OF GUILTY AND MOTION TO DISMISS INDICTMENT (ECF NO. 29)** |
| **ROY AURNELL BUFORD,** | |
| Defendant. | |

Defendant Roy Aurnell Buford moved to withdraw his guilty plea and dismiss the indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 29. Buford contends that the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) mandates dismissal of the charge against him because it renders the felon-in-possession statute unconstitutional under the Second Amendment—both facially and as applied to him. The government has filed a response in opposition to Buford's motion. ECF No. 30.

After careful consideration of the parties' arguments, Buford's motions to withdraw guilty plea and to dismiss indictment will be **DENIED**.

# I.   BACKGROUND

On June 29, 2023, Buford was indicted for possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 13. According to the criminal complaint, on March 25, 2023, officers with the Detroit Police Department ("DPD") were dispatched to reported shots fired in progress. Upon arrival, the officers observed Buford running southbound on the west sidewalk of Oldtown Street, in the city of Detroit. Buford matched the description received from the dispatch. The officers stopped to investigate and as Buford approached the officers he pulled a firearm from his pocket. The officer ordered Buford to put the weapon on the ground, and he complied. The officers recovered the weapon which was a Rossi .38 caliber revolver. *Id.*

Buford was detained and escorted to a scout car. He refused to provide officers with details of the incident but said, "I messed up. I did 24 years now I'm going back to prison." Additional officers were dispatched to the area to assist and spoke to another man who arrived on scene, identified as A.C. A.C. reported that he got into a fight with Burford in the basement of a house on Oldtown Street, and as A.C. left the residence, and was walking away, Buford shot at him five times. Officers observed a gunshot graze wound on A.C.'s right leg. Buford was arrested and conveyed to the Detroit Detention Center for processing. *Id.*

Buford's prior criminal history is set out in the Presentence Investigation Report ("PSR") filed under seal in this case. ECF No. 26,

2

PageID.126–28. The PSR shows that on February 10, 1993, Buford was convicted of controlled substances, possession of cocaine, heroin, and other narcotics less than 25 grams, and sentenced to 90 days of incarceration. *Id.* PageID.126–27.

On March 3, 1996, Buford was convicted following a jury trial of second-degree murder and carrying a firearm in the commission of a felony (felony firearm) and sentenced to 20 to 30 years of incarceration for the second-degree murder conviction and two years for the felony firearm conviction. The Report states that the facts underlying this offense is that Buford and the victim Corey Finney were at a party in Detroit, Michigan. Finney observed Buford and Tarneshia Buford arguing and intervened between the two. Finney and Buford then got into an argument. Buford left the party and returned a short time later, armed with a sawed-off shotgun and pointed it at Tarneshia. Finney stepped in between Tarneshia and Buford and Buford then fired one shot, striking Finney in the chest. Buford fled the scene and Finney was later pronounced dead at the hospital. *Id.* PageID.127.

Buford received numerous misconduct tickets while incarcerated with the Michigan Department of Corrections ("MDOC"), including four for possession of a weapon, three for threatening behavior, two for Class III Misconduct, two for possession of stolen property-theft, and two for assault-serious injury to prisoner, among many others. *Id.*

3

In 2004, while incarcerated, Buford was convicted of prisoner possessing weapon and sentenced to 38 to 60 months of incarceration. *Id.* PageID.128. The PSR describes the facts underlying this offense as follows. Buford told a fellow inmate that he needed to speak with him. As they were walking, Buford struck the inmate in the chest multiple times with a metal object, causing a small puncture wound on the inmate's chest. The inmate reported that Buford stated while striking him, "Keep my name out of your damn mouth," and that he stated immediately after "We can go all the way." Officers searched Buford and found a 7.5 inch piece of steel, filed to a point, in his front pants pocket. Buford plead guilty on November 19, 2004, and he was sentenced as noted above on December 13, 2004. *Id.*

While in MDOC custody for this offense, Buford again received a number of misconduct tickets, including one for possession of a weapon, one for threatening behavior, one for Class III misconduct, one for possession of stolen property-theft, and one for serious injury to a prisoner, among others. *Id.*

On July 26, 2019, Buford signed and dated a MDOC Prisoner Pre-Release Notice CSJ-290, in which he acknowledged that he is a convicted felon and prohibited from using, carrying, or possessing a firearm or ammunition, in violation of 18 U.S.C. § 922(g). ECF No. 1, PageID.5. Buford was paroled on August 1, 2019, and he was discharged from parole by the MDOC on August 1, 2021. ECF No. 26, PageID.128.

4

Buford committed the instant offense on March 25, 2023, less than two years after he was discharged from parole for murder. *Id.*

On November 6, 2023, Buford pleaded guilty to the single count in the instant Indictment of felon in possession of a firearm, 18 U.S.C. § 922(g)(1). 11/6/23 Minute Entry. The parties also submitted a signed Rule 11 plea agreement. ECF No. 21. Buford's original sentencing date of February 20, 2024 was reset several times by stipulation and order of the parties.

Then, on November 4, 2024, Buford filed the instant motion to withdraw guilty plea and to dismiss the indictment to allow him to challenge the constitutionality of 18 U.S.C. § 922(g). ECF No. 29. The government filed a response in opposition to Buford's motion. ECF No. 30.

## II.   LEGAL STANDARD

### A. Withdraw Plea

A defendant who wishes to withdraw a plea before the court accepts it has a right to do so "for any reason or no reason" at all. Fed. R. Crim P. 11(d)(1). But once the district court has accepted a plea, as in this case, a defendant may withdraw it before sentencing only if he can "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

The Sixth Circuit has identified several non-dispositive factors for differentiating pleas "entered hastily" from "those entered strategically."

*United States v. Hudson*, No. 23-1341, 2024 WL 140550, at *3 (6th Cir. Jan. 12, 2024). These factors include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded in part by statute as stated in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). These factors represent "a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The movant bears the burden of establishing that his motion should be granted. *United States. v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011).

There is no "absolute right to withdraw a guilty plea" that the court has accepted. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). That is because plea withdrawal is "inherently in derogation of the public interest in finality and the orderly administration of justice." *Id.* (citation omitted). Thus, when a plea is knowing, voluntary, and taken "at a hearing at which [the defendant] acknowledged committing the crime," plea withdrawal should seldom be allowed. *Id.* (citation omitted). After

all, the rule permitting withdrawal does not exist "to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice." *Bashara*, 27 F.3d at 1181 (6th Cir. 1994) (cleaned up).

## B. Dismissal of Defective Indictment

A defendant may seek dismissal of a defective indictment in a pretrial motion under Federal Rule of Criminal Procedure 12(b)(3).

## C. Second Amendment and Felon-in Possession Laws

The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. For the first two centuries after its adoption, the Second Amendment was generally understood to concern the maintenance and preservation of a militia for the common defense of the people. *See, e.g., United States v. Miller*, 307 U.S. 174, 178–79 (1939) (concluding that the Second Amendment did not protect the right of an individual to possess a "shotgun having a barrel of less than eighteen inches in length" because there was no evidence that such a weapon "could contribute to the common defense"). In *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), the Supreme Court for the first time interpreted the Amendment to find in it an "inherent" right of every law-abiding American citizen to bear arms in defense of *self*. But it cautioned that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and expressly

noted that "longstanding prohibitions on the possession of firearms by felons" were "presumptively lawful." *Id.* at 626–27.

While *Heller* did not articulate a framework for courts to apply in considering challenges to the constitutionality of regulations implicating the Second Amendment, the Supreme Court did so in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). That framework has two steps. First, a court must evaluate whether the government can rebut the presumption that the Second Amendment protects the challenged gun-possession conduct. *Bruen*, 597 U.S. at 24. Second, the court must evaluate whether the government can justify the challenged regulation by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation." *Id.* In its most recent Second Amendment case, *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court again reiterated *Heller*'s admonition that prohibitions "on the possession of firearms by 'felons and the mentally ill' are 'presumptively lawful'" and explained they were consistent with founding-era regimes that disarmed individuals who posed a "clear threat of physical violence" to others. *Id.* at 698–99.

Recently, under *Bruen*'s framework, the Sixth Circuit held that felons are among "the people" protected by the Second Amendment and concluded that § 922(g)(1)'s ban on felons possessing firearms was facially consistent with the Second Amendment. *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). After exploring the history of gun

8

regulation, the Sixth Circuit found that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," *id.* at 657, and that § 922(g)(1) "is constitutional on its face and as applied to dangerous people," *id.* at 662–63.

The Court makes the determination as to whether a defendant's background and prior convictions show that he is dangerous so that the general rule prohibiting felons from possessing firearms may be constitutionally applied to a particular defendant. The defendant bears the burden to show he is not dangerous and thus falls outside of § 922(g)(1)'s constitutionally permissible scope. *Id.* at 662. The dangerousness determination is "fact-specific, depending on the unique circumstances of the individual defendant," including the person's "entire criminal record," such as any evidence of past convictions in the record. *Id.* at 659–60.

The Sixth Circuit, in particular, recognized that "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* at 658. In doing so, the Sixth Circuit described a three-tiered analytical framework for evaluating the dangerousness of prior convictions. While courts need not find a "categorical match to a specific common-law crime" to establish that an individual is dangerous, the *Williams* court identified three broad categories of crimes: (1) crimes against the person—which would include violent crimes such as murder, rape, assault, and robbery; (2) crimes that pose a significant threat of

danger to others, such as drug trafficking and burglary, where the nature of the crimes create the possibility of a violent confrontation; and, (3) crimes like mail fraud and making false statements, which "cause no physical harm to another person or the community." *Id.* at 658–59. As to the first two types of crime, the Sixth Circuit explained that "[a]n individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous," *id.* at 663, while the kinds of crimes falling into the third category do not necessarily "make a person dangerous." *Id.* at 659.

The above analysis suggests that if a defendant charged with § 922(g)(1) has a prior felony conviction that fits in the first two categories, a court would be justified in finding that he was dangerous and therefore would be prohibited from possessing a firearm. But to say that is not to say that defendants who committed crimes less clearly violent or likely to result in danger to others are automatically to be considered "non-dangerous." Indeed, the Sixth Circuit made it clear that "[w]hen evaluating dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction.... Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as past convictions—when assessing a defendant's dangerousness." *Id.* at 659–60. Judicially noticeable facts are facts "not subject to reasonable dispute" because they are "generally known" or "can

10

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Sixth Circuit noted that prior convictions can be accepted "without an evidentiary hearing or jury fact finding" and that a presentence report whose contents have not been objected to can also be so considered. *Id.* at 662 (citing to *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)). It recognized "courts may wish to consider information beyond criminal convictions," such as a civil restraining order, but left open the question of what information is "relevant." *Id.* at 659 n.12.

Applying the dangerousness rule to the case before it, the Sixth Circuit concluded that § 922(g)(1) may be constitutionally applied to Williams because he had previously been convicted of two felony counts of aggravated robbery with a deadly weapon—which the court noted would be "sufficient to conclude that Williams, if armed, presents a danger to others or the public"—as well as attempted murder and possession of a firearm as a felon. *Id.* at 662. The court noted that "[t]he government could've pointed to any one of those convictions to demonstrate his dangerousness." *Id.* Interestingly, the court included Williams' prior conviction for felon-in-possession of a firearm as the kind of felony that demonstrates dangerousness. The Sixth Circuit thus sees felon-in-possession, which is not a crime against a person, as falling in the second category of crimes which, like drug trafficking or burglary,

carries with it the possibility that violence or harm to others might occur during its commission.

More recently, the Sixth Circuit held that § 922(g)(1) was constitutional against a defendant's "as applied" challenge where the defendant had multiple prior convictions punishable by imprisonment for more than one year that included 2019 convictions for operating a motor vehicle under the influence of alcohol/drugs (fourth offense), driving under the influence on a suspended license, and possession of a controlled substance. *United States v. Goins*, 118 F.4th 794, 796 (6th Cir. 2024). Goins' state sentence in 2019 included a four-year sentence of probation, which included the condition that he not possess a firearm. *Id.* He was subject to that probationary condition at the time he possessed the firearm in question in his federal case. *Id.* The Sixth Circuit found § 922(g)(1) constitutional as applied to Goins because the nation's historical tradition of firearms regulation "demonstrates that Congress may lawfully disarm probationers like Goins, who (1) are under a firearm possession limitation as a condition of probation, (2) are under a relatively short probation sentence for a dangerous crime, and (3) whose repeated and recent actions show a likelihood of future dangerous conduct." *Id.* at 797.

## III. DISCUSSION

In this case, Buford moves to withdraw his guilty plea, not because he professes his innocence, but instead because of a change in Sixth

12

Circuit caselaw. Buford does not deny that he possessed a firearm on March 24, 2023. ECF No. 29, PageID.160. Rather, he seeks to challenge the constitutionality of 18 U.S.C. § 922(g), as applied to him, arguing that the Sixth Circuit's recent decision in *Williams* suggests he may not have borne criminal responsibility for possession of the firearm if he would not have been considered a dangerous person under *Williams*. Buford states that "in the event [he] failed to meet his burden in his *Williams* challenge, he would have no basis to challenge his criminal responsibility, and would plead guilty again." *Id.* PageID.157. Buford requests, in the interest of judicial economy, that the Court make a finding on the merits of his *Williams* motion to dismiss before deciding the motion to withdraw.

The government agrees that the *Bashara* factors do not neatly fit the circumstances of this case because Buford's sole reason for moving to withdraw his guilty pleas is to allow him to challenge the constitutionality of 18 U.S.C. § 922(g) as applied to him. ECF No. 30, PageID.194. In the interest of judicial economy, therefore, the Court will first decide Buford's motion to dismiss the indictment.

## A. Motion to Dismiss

Buford makes two arguments in support of his motion to dismiss. First, and not surprisingly, he argues that although a felon he is not a "dangerous person" and that consequently § 922(g)(1)'s prohibition of firearms possession is unconstitutional as applied to him. Buford also argues that the Sixth Circuit's interpretation of § 922(g)(1) is

unconstitutionally vague such that it should not be followed by this Court.

### 1. As-Applied Challenge

The Court may consider the defendant's "entire criminal record" when determining dangerousness in connection with an as-applied challenge to § 922(g)(1). *Williams*, 113 F.4th at 659. The most serious prior felony of Buford is his 1996 conviction for second degree murder and felony firearm. As a violent crime committed against a person, and the use of a gun to commit that murder, Buford's conviction for second degree murder falls squarely in the category of offenses that "speak directly to whether an individual is dangerous" and that constitute "strong evidence that an individual is dangerous." *Id.* at 658. While *Williams* formally left as an "open question" whether "crimes in this bucket are dispositive," a defendant with a prior conviction for a crime directly involving physical harm or a serious physical threat carries an "extremely heavy" burden to disprove their presumed dangerousness. *Id.* In fact, dangerousness may be "self-evident" from a prior conviction falling in this category. *Id.* at 660.[1]

---

[1] Buford filed a supplemental brief on December 16, 2024, asserting that the Court should conduct an evidentiary hearing on Defendant's motion to dismiss to resolve disputes as to the facts underlying Buford's prior murder and felony firearm convictions and prisoner possess weapon conviction. ECF No. 32. However, *Williams* indicated that a dangerousness finding may be made by the district court itself. *See* 113

Buford accurately points out that this second-degree murder conviction occurred 28 years ago when he was 20 years old. ECF No. 29, PageID.165. *Williams* gives no specific guidance as to whether, in making the dangerousness decision, district courts should give less weight to convictions for violent crimes which occurred long ago. Common sense, however, strongly suggests they should be given less weight. *See United States v. Green*, No. 23-CR-20506, 2024 WL 4469090, at *3 (E.D. Mich. Oct. 10, 2024) (Behm, J.) (noting that the age of a 13-year-old conviction suggested it should not be weighed heavily). Regardless, under *Williams*, the burden is on Buford to prove he is not dangerous, *Williams*, 113 F.4th at 662, and because his prior conviction is for a crime directly involving physical harm or a serious physical threat, that is an "extremely heavy"

---

F.4th at 660 ("District courts are well-versed in addressing [§ 922(g)(1)] challenges[,] ... [and] [w]e are therefore confident that the dangerousness inquiry is workable for resolving as-applied challenges to § 922(g)(1)."); *see also id.* ("Courts may consider any evidence of past convictions in the record ... when assessing a defendant's dangerousness."). The Sixth Circuit also held that "a court can accept prior convictions without an evidentiary hearing or jury fact finding." *Id.* at 662 (citing *Almendarez-Torres*, 523 U.S. at 228-39); *see also United States v. Barber*, No. 3:22-cr-511, 2024 WL 4443763, at *2 (N.D. Ohio Oct. 8, 2024) ("nothing in *Williams* suggest that [defendant] must be given" an evidentiary hearing). The Court may take judicial notice of Buford's prior convictions and the facts underlying those prior convictions as set forth in the PSR, which Buford did not object to, *Williams*, 113 F.4th at 662 (relying on details in the PSR about Williams' "long record of past crimes"), and he cannot relitigate the facts underlying those prior convictions in this proceeding.

burden. *Id.* at 658. Considering the age of Buford's second degree murder conviction, the Court gives it less weight in determining dangerousness than it would if the conviction were recent. If it were Buford's only prior conviction, and if in the intervening years he had proven himself to be a model citizen, Buford might be able to carry his burden of showing non-dangerousness.

He cannot do so here however because, as discussed in detail above, during Burford's incarceration in the MDOC, he continued to exhibit dangerous behavior, including multiple instances of possession of a weapon, threatening behavior, assault, and serious injury to a prisoner. Assault and serious injury to a prisoner are undoubtedly violent crimes against a person. In addition, while he was serving his sentence for murder, Buford was actually charged and convicted of prisoner possession of a weapon and sentenced to 38 to 60 months in prison for an altercation in which Buford struck another inmate multiple times in the chest with a 7.5 inch sharpened piece of steel.

And again, following that conviction, Buford continued to exhibit dangerous behavior, including possession of a weapon, threatening behavior, and serious injury to a prisoner, among other violations. ECF No. 26, PageID.127–28. It is also significant that Buford committed the instant offense less than two years after he was discharged from parole for murder.

*Williams* indicates that the "entire criminal record" can be considered in determining dangerousness, not solely the predicate offense or offenses that could trigger criminal prosecution under § 922(g)(1). *See* 113 F.4h at 659–60. Buford's record reveals a "dangerous pattern" of violent crimes against persons that supports a finding of dangerousness. *See Goins*, 118 F.4th at 804 (defendant's "repeated actions demonstrate[] a likelihood of future dangerous conduct"); *see also United States v. Pickett*, No. 3:22-cr-00014-2, 2024 WL 4854738, at *3 (M.D. Tenn. Nov. 21, 2024) (concluding that "even where, as here, a defendant's 'crimes are old, the *repeated nature* of his drug trafficking offenses indicates dangerousness.'"); *United States v. Bell*, No. 2:20-cr-29336, 2024 WL 4589812, at *5 (E.D. Mich. Oct. 28, 2024) (Drain, J.) ("the repeated nature of [the defendant's] drug trafficking offenses indicates dangerousness.").

Further, although the age of a defendant's prior convictions may reduce the probative value of those offenses when they are considered on their own, they are still entitled to some weight. "*Williams* states that a district court may 'evaluate a defendant's entire criminal record[,]' and thus, the consideration of older convictions in the determination of a defendant's dangerousness is not precluded." *United States v. Smith*, No. 3:22-CR-57, 2024 WL 5040930, at *6 (E.D. Tenn. Dec. 9, 2024) (quoting *Williams*, 113 F.4th at 663). In line with that reasoning, several district courts in this Circuit have found older, violent convictions on their own

17

to be sufficient to demonstrate dangerousness under *Williams. See Smith*, 2024 WL 5040930, at \*5 (defendant's 1995 conviction for manslaughter and 2006 conviction for aggravated assault support a finding that defendant is a "dangerous felon"); *United States v. Lawson*, No. 3:23 CR 627, 2024 WL 4443765, at \*2 (N.D. Ohio Oct. 8, 2024) (concluding that the defendant's 1994 rape conviction, a crime falling in the first category identified by *Williams,* was sufficient to demonstrate dangerousness even though the defendant entered an *Alford* plea to the charge); *United States v. Quezada*, No. 5:22-cr-327, 2024 WL 3849923, at \*1, \*7 (N.D. Ohio Aug. 16, 2024) (determining that because the defendant had prior convictions for reckless homicide in 2010 and drug distribution in 2011, the defendant could not demonstrate that § 922(g)(1) was unconstitutional as applied to him); *United States v. McQueen*, No. 24-20136, 2024 WL 3331629, at \*1, \*6 (E.D. Mich. July 8, 2024) (Lawson, J.) (finding that the defendant's past crimes of carjacking, armed robbery, and illegal firearm possession, for which the defendant was convicted in 2007, demonstrate why § 922(g)(1) survives an as-applied challenge, without discussing the age of the prior convictions); *United States v. El Bey*, No.1:21-cr-110, 2024 WL 22701, at \*1, \*4 (S.D. Ohio Jan. 2, 2024) (relying on the defendant's 1999 conviction for felonious assault and defendant's 2007 conviction for felonious kidnapping and felonious assault in rejecting defendant's "temporal argument" and determining that § 922(g)(1) was constitutional as applied to the defendant).

18

Moreover, the elapse of a significant period of time without a conviction is not so probative in this case when Buford was incarcerated for over 23 years between his 1996 conviction and his current indictment. *See Pickett*, 2024 WL 4854738, at *3 ("Although Pickett's drug trafficking convictions are several years old, it appears he spent a significant amount of time in prison between the ages of 24 and 30" and "this is a reality that diminishes the force of [Pickett's] claim that his convictions are dated.") (internal quotation marks omitted); *United States v. Norris*, No. 3:23-cr-572, 2024 WL 4816246, at *7 (N.D. Ohio Nov. 18, 2024) (noting that even though defendant's drug possession offenses were committed "more than a decade ago," defendant "was incarcerated for several years between his conviction and his current indictment"); *United States v. Smith*, No. 1:23-cr-83, 2024 WL 4453270, at *3 (E.D. Tenn. Oct. 9, 2024) (noting, when considering defendant's criminal history and asserted "rehabilitation efforts," that the defendant "remained incarcerated until 2021"). Buford committed the instant offense less than two years after he completed parole for his murder conviction. So the passage of time since Buford's most recent felony convictions does not substantially undermine their probative value for dangerousness.

After considering Buford's criminal history as a whole, the Court concludes that § 922(g)(1)'s prohibition of convicted felons from

19

possessing firearms[2] is constitutional as applied to Buford. Buford offers no convincing evidence that would undermine such a finding; he fails to meet his "extremely heavy" burden to demonstrate that he is "not dangerous." *See Williams*, 113 F.4th at 657. Therefore, the Court need look no further than Buford's 1995 Felony Firearm and Homicide-Murder Second Degree conviction and his 2004 Prisoner Possess Weapon

---

[2] In other opinions, this Court has indicated its disapproval of the terms "disarmament" and "rearmament" to refer to the enforcement of our federal law's prohibition of firearms possession against previously convicted felons and situations where that law has been found unconstitutional as applied. An individual is not "disarmed" because a reasonable law prohibits that person from possessing a firearm. That person is simply not permitted by law to have a gun. Disarming someone means taking the weapon from their hands. Using that term, as well as "rearmament," assumes a default position that every person is carrying a gun—therefore if it becomes illegal for a person to carry a gun, the person is "disarmed." According to a 2023 survey by the Pew Research Center, approximately 32 percent of American adults own firearms. See https://www.pewresearch.org/social-trends/2017/06/22/the-demographics-of-gun-ownership/ (last visited, December 27, 2024). For most people, then, a federal law restricting firearms possession does not "disarm" them; they were not armed in the first place. Most people aren't. Using these terms may encourage a vision of an armed society appealing to certain political factions, but it is not a correct use of the word. To become "armed," a person has to make a decision to obtain and possess a firearm, just as a person makes a decision to obey or disregard the law. Congress is not involved in some scheme to "disarm" the people—it's laws are a valid exercise of the people's representatives to enact legislation—and the prohibition of felons possessing firearms represents a reasonable such exercise until the Supreme Court clearly says that it violates its more recent interpretation of the Second Amendment.

conviction to conclude that his conduct meets the dangerousness requirement for § 922(g)(1) to apply to him.

After considering Buford's criminal history as a whole, the Court concludes that § 922(g)(1)'s prohibition of firearms possession by felons is constitutional as applied to Buford and supports the conclusion that Buford, "if armed, presents a danger to others or the public" for purposes of § 922(g)(1). Buford's as-applied challenge fails.

### 2. Facial Challenge

Buford also argues the Sixth Circuit's interpretation of the statute in *Williams* renders the statute overbroad and void for vagueness such that this Court should not follow *Williams*. ECF No. 29, PageID.171–75. But the Sixth Circuit has already concluded § 922(g)(1) was not susceptible to a facial challenge because "most applications of § 922(g)(1) are constitutional" such that a defendant could not demonstrate that "no set of circumstances exists under which the Act would be valid." *Williams*, 113 F.4th at 643, 657.

To the extent Buford claims the *Williams* rule itself is overbroad and void for vagueness, this argument fails as well. Vagueness and overbreadth are doctrines that apply to criminal statutes—where a law's constitutionality may be challenged if it is so vague that its scope cannot be understood by the average citizen or invites arbitrary and discriminatory enforcement, *Johnson v. United States*, 576 U.S. 591, 595 (2015), or it over-burdens innocent conduct protected by the First

21

Amendment, *City of Chicago v. Morales*, 527 U.S. 41, 57 (1999)—but the doctrines are not usually invoked to challenge a rule of interpretation pronounced by a court. *See United States v. Lopez*, 929 F.3d 783, 785 (6th Cir. 2019) ("[T]he void-for-vagueness doctrine [ ] focuses on the actions of Congress, not the other branches."). However, there is something to the argument that the *Williams* rule will create confusion in the enforcement of the felon-in-possession statute. It will make it difficult for police officers, parole and probation officers, prosecutors, and of course individuals with felony or eligible misdemeanor convictions themselves, to know whether a person can or cannot lawfully possess a firearm because the answer to that question requires an assessment of dangerousness based on that person's unique criminal record. Problems with ensuring adequate notice of the prohibited conduct, avoiding arbitrary enforcement as well as proving the requisite mens rea element of the felon-in-possession offense appear to have been created. The new rule also means that every person charged in federal court under § 922(g)(1) will assert that the criminal statute does not apply to them because they are not dangerous, underscoring the practical difficulties of applying the standard.

But this Court assumes that the Sixth Circuit was aware of these kinds of problems in application when it carefully and thoroughly explained its historical reasons for concluding that "our nation's history and tradition demonstrate that Congress may" enact laws prohibiting

"individuals they believe are dangerous" from possessing firearms, and that because "most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge." *Williams*, 113 F.4th at 657. The overbreadth and void-for-vagueness argument is a facial challenge. The Court cannot operate from the assumption that the Sixth Circuit adopted a rule that violated its own conclusion that the statute was not susceptible to a facial challenge. This Court is thus bound by the Sixth Circuit's interpretation of the Second Amendment which requires that such "as-applied" challenges be adjudicated. And so it will apply *Williams*' interpretation of § 922(g)(1) unless the Sixth Circuit or the Supreme Court alters that interpretation. The Court declines Buford's invitation to declare that the Sixth Circuit's own opinion on the constitutionality of § 922(g)(1) is somehow unconstitutional.

For all of the above reasons, Buford's motion to dismiss the indictment under 18 U.S.C. § 922(g)(1) is **DENIED**.

### B. Motion to Withdraw Plea

As Buford states in his motion to withdraw plea, he seeks to withdraw his plea only to assert his *Williams* challenge in the motion to dismiss. He states that "in the event that [he] failed to meet his burden in his *Williams* challenge, he would have no basis to challenge his criminal responsibility, and would plead guilty again." ECF No. 29, PageID.157. Because Buford's motion to dismiss is denied, his motion to withdraw his plea is also **DENIED** because he has failed to show a "fair

23

and just reason for requesting withdrawal." *See* Fed. R. Crim.
P.11(d)(2)(B).

## IV.   CONCLUSION

For the reasons set forth above, Buford's motions to withdraw his
guilty plea and to dismiss the indictment, ECF No. 29, is **DENIED.**

**IT IS SO ORDERED.**

Dated: December 27, 2024    /s/Terrence G. Berg
                           _____
                           HON. TERRENCE G. BERG
                           UNITED STATES DISTRICT JUDGE